# EXHIBIT A

Anthony S. Almeida, Esq. (N.J. Id. No. 024552005)
**POULOS LOPICCOLO, PC**
1305 South Roller Road
Ocean, New Jersey 07712
Tel: (732) 757-0165
Fax: (732) 358-0180
Email: almeida@pllawfirm.com
*Attorneys for Plaintiff Dwayne Powell*

| | |
|---|---|
| DWAYNE POWELL,<br><br>                 Plaintiff,<br><br>v.<br><br>DEALMED MEDICAL SUPPLIES LLC; and ABC CORP.(S) 1-10 and JANE & JOHN DOE(S) 1-10,<br><br>                 Defendants. | SUPERIOR COURT OF NEW JERSEY<br>MONMOUTH COUNTY<br>LAW DIVISION, CIVIL PART<br><br>DOCKET NO.: MON-L-<br><br>CIVIL ACTION<br><br>**COMPLAINT<br>AND JURY TRIAL DEMAND** |

Plaintiff Dwayne Powell, by way of Complaint and Jury Trial Demand pleading against Defendants DealMed Medical Supplies LLC, ABC Corps.(s) 1-10 and Jane & John Doe(s) 1-10, alleges as follows:

## THE PARTIES AND VENUE

1.   Plaintiff Dwayne Powell (hereinafter "Plaintiff") resides in the Borough of Freehold, in the County of Monmouth, and in the State of New Jersey.

2.   Defendant DealMed Medical Supplies LLC ("DealMed" or "Defendant") is a for-profit, foreign limited liability company organized and existing under the laws of the State of New York with its principal place of business located at 3512 Quentin Road, Suite 200, Brooklyn, New York 11234.

3.   Defendant DealMed is in the business of providing medical supplies and devices to various customers throughout the East Coast of the United States such as physician and healthcare

providers, surgical and outpatient facilities, specialty providers, government and public sector providers and facilities, dialysis and renal care facilities, amongst others.

4. Defendant DealMed's medical supply and device services include manufacturing, distribution, representation, purchasing and consultancy.

5. Defendant DealMed delivers its medical supplies and devices to its customers by utilizing multiple distribution centers in various locations, which is intended to provide faster and ahead-of-schedule delivery.

6. Defendant DealMed operates one such distribution center, colloquially referred to as its New Jersey Distribution Center, at 600 James Street, Lakewood, New Jersey 08701 (the "New Jersey Distribution Center").

7. At all relevant times hereto, Plaintiff was employed by Defendant DealMed out of or within its New Jersey Distribution Center.

8. Defendant DealMed is an "employer" as defined by and subject to the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -50 (the "LAD"). See N.J.S.A. 10:5-5(e).

9. Defendant DealMed is also an "employer" as defined by and subject to New Jersey's Workers' Compensation Act, N.J.S.A. 34:15-1 to -147 (the "WCA"). See N.J.S.A. 34:15-36.

10. Defendant DealMed is also an "employer" as defined by and subject to the federal Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2611 to 2654 (the "FMLA"). See 29 U.S.C. § 2611(4).

11. At all relevant times herein, Plaintiff was an "eligible employee" guaranteed the rights, privileges, benefits and protections of the FMLA. See 29 U.S.C. § 2611(2).

12. At all relevant times herein, Defendant DealMed was an "employer" (or "master") of Plaintiff as an "employee" (or "servant") as defined by and subject to the common law of New Jersey. See Lowe v. Zarghami, 158 N.J. 606, 615-16 (1999) (acknowledging the common law "control test").

13. Defendants ABC Corp(s). 1-10 and Jane & John Doe(s) 1-10, currently unknown entities or persons designated by fictitious names, may also be "employers" and/or aiders, abettors, inciters, compellers and/or coercers of discrimination and retaliation, as defined by and subject to the LAD, the WCA, the FMLA and/or the common law of New Jersey, and therefore may also be liable herein for Plaintiff's damages.

14. Venue is proper in this County pursuant to R. 4:3-2(a)(3) because Plaintiff, a "party to the action," resides in Monmouth County at the commencement of this action.

## SPECIFIC FACTUAL ALLEGATIONS

15. Plaintiff initially began his employment with Defendant DealMed in October of 2021 through a staffing agency.

16. Plaintiff was then hired for employment with Defendant DealMed as a full-time, in-house employee on or about January 31, 2022.

17. At all relevant times herein, Plaintiff worked as a Warehouse Laborer in Defendant DealMed's New Jersey Distribution Center.

18. During Plaintiff's tenure of employment with Defendant DealMed, his job performance was at all times competent and acceptable to DealMed.

19. On February 14, 2022, while on work duty at DealMed's New Jersey Distribution Center, Plaintiff was struck by a forklift being operated by his supervisor, Logistics Supervisor

- 3 -

Richard "Doe" (last name currently unknown but believed to be "Stokes" or some similar iteration thereof) (hereinafter "Supervisor Richard").

20. As a result of this incident, Plaintiff suffered a tear of the medial meniscus of his left knee.

21. Plaintiff reported the incident to both Supervisor Richard and DealMed's General Manager at the New Jersey Distribution Center, Ben "Doe" (last name also currently unknown) (hereinafter "GM Ben").

22. However, neither Supervisor Richard nor GM Ben generated an incident report of the forklift crash in an obvious attempt to "sweep it under the rug."

23. After the pain in his knee became too intolerable to bear, Plaintiff reported the incident to DealMed's Human Resources Department and sought assistance.

24. Unfortunately, Plaintiff was not provided with competent advice.

25. In or about May of 2023, Plaintiff, through private counsel, filed a workers' compensation claim against Defendant DealMed.

26. Plaintiff subsequently began medical treatment and observation through Seaview Orthopaedics.

27. Upon information and belief, Seaview Orthopaedics is Defendant DealMed's workers' compensation medical provider.

28. Seaview Orthopaedics ultimately scheduled Plaintiff for a knee surgery to be performed on May 14, 2024.

29. Plaintiff was told that he would need approximately six (6) to eight (8) weeks to recuperate from the surgery.

30. Plaintiff immediately communicated this information to GM Ben and Supervisor Richard.

31. Despite this, Plaintiff worked his last shift prior to the surgery on May 10, 2024, without ever being provided any FMLA or disability paperwork of any kind to complete and return to Defendant DealMed.

32. Defendant DealMed, through its Human Resources Department and/or GM Ben and/or Supervisor Richard, had a duty to provide Plaintiff with FMLA or disability paperwork. See, e.g., In re Tp. of Parsippany-Troy Hills, 419 N.J. Super. 512, 520 (App. Div. 2011) ("Employers are required to inform employees when they may be eligible for FMLA leave, even if the employee does not specifically request FMLA leave.") (Citing 29 C.F.R. § 825.301(a)); McElwee v. County of Orange, 700 F.3d 635, 642 (2d Cir. 2012) ("under certain circumstances, an employer is required to act proactively and engage in an interactive process to accommodate the disability of an employee even if the employee does not request accommodation").

33. Inexplicably, while out on his medical leave of absence, on June 26, 2024, Plaintiff received a letter from ADP TotalSource[1] that his employment with DealMed "has ended due to resignation, termination, and/or job elimination …"

34. Then, on July 1, 2024, Plaintiff received an email from Defendant DealMed's Human Resources Supervisor, Vanessa Sang, which reads:

> We could not hold your position indefinitely and had to fill your position. We have not received any information regarding your expected return date, which has necessitated this decision.

---

[1] ADP TotalSource identifies itself as a provider of "human resources services to worksite employees like [Plaintiff] through a co-employment relationship with" Defendant DealMed.

- 5 -

35. Naturally, Ms. Sang's email floored Plaintiff because of how utterly lacking in veracity and reality it was.

36. First, Plaintiff specifically told his superiors, GM Ben and Supervisor Richard, how long of a medical leave of absence he required.

37. Second, Plaintiff's surgery was performed by DealMed's workers' compensation medical provider, Seaview Orthopaedics.

38. Surely Defendant DealMed, at the very least, had constructive knowledge of Mr. Plaintiff's need for the medical leave of absence.

39. Thereafter, on July 17, 2024, Seaview Orthopaedics provided Plaintiff with a "Workers' Comp Quick Note" that expressly provided that he was cleared to return to "full duty" as of July 22, 2024.

40. Thus, Plaintiff was cleared for full duty sixty-nine (69) days, or less than ten (10) weeks after, his May 14, 2024, knee surgery.

41. The FMLA provides job protection medical leave to "eligible employees" for a period of "12 workweeks." See 29 U.S.C. § 2612(a)(1).

42. Accordingly, Plaintiff was medically cleared, ready and willing to return to work within the FMLA's twelve (12) workweek protection period.

43. Despite this, Plaintiff's employment was unlawfully terminated by Defendant DealMed within the FMLA's twelve (12) workweek protection period.

44. A determinative and/or motivating factor in Defendant DealMed's decision to terminate Plaintiff's employment was that Plaintiff suffered from a physical disability recognized by the LAD and was therefore in contravention of the LAD.

45. In addition to and/or in the alternative, a determinative and/or motivating factor in Defendant DealMed's decision to terminate Plaintiff's employment was Defendant DealMed's perception that Plaintiff was disabled and/or Defendant DealMed's negative perception of Plaintiff's continued utility as an employee, and was therefore in in contravention of the LAD.

46. Plaintiff was also or alternatively terminated by Defendant DealMed in retaliation for availing himself, or otherwise attempting to avail himself, of rights protected by the LAD.

47. Plaintiff was also or alternatively terminated by Defendant DealMed in contravention of the LAD because it terminated his employment without first engaging in the requisite "interactive process" to determine whether or not Defendant DealMed could reasonably accommodate Plaintiff's disability.

48. Plaintiff was also or alternatively terminated by Defendant DealMed as unlawful retaliation for filing a workers' compensation claim.

49. Plaintiff's termination was also or alternatively unlawful because it was the proximate result of FMLA interference.

50. Plaintiff's termination was also or alternatively actionable because it was the proximate result of Defendant DealMed's negligence.

51. The discrimination, retaliation and other illegality alleged above was especially egregious and committed with malice or in wanton and willful disregard of Plaintiff's rights by Defendant DealMed.

52. At least one of Defendant DealMed's upper management employees actually participated in, or was willfully indifferent to, the discriminatory conduct described herein, including but not limited to, Defendant DealMed's Human Resources Supervisor, Vanessa Sang, and other decision-makers such as Jane & John Doe(s) 1-10.

## COUNT ONE

### (Violation of the LAD – Unlawful Discharge – Disability Discrimination)

53. Plaintiff repeats and reiterates each of the above allegations of the Complaint as though fully set forth herein.

54. At the time Plaintiff's employment was terminated by Defendant DealMed, Plaintiff was suffering from a physical "disability" or "handicap" as recognized by the LAD.

55. The physical "disability" or "handicap" under the LAD Plaintiff was suffering from was a medically diagnosed medial meniscus tear of his left knee.

56. Defendant DealMed, through its Human Resources Department and/or GM Ben and/or Supervisor Richard, was aware of Plaintiff's "disability" and/or "handicap."

57. Plaintiff's "disability" or "handicap" was a motivating factor in Defendant DealMed's decision to terminate Plaintiff's employment.

58. Defendant DealMed's conduct against Plaintiff as described above otherwise violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -50.

59. As a result of Defendant DealMed's unlawful conduct, Plaintiff has endured significant damages including, but not limited to, physical and bodily injuries, severe emotional distress, humiliation, embarrassment, personal hardship, career and social disruption, psychological and emotional harm, economic losses, and other such damages.

**WHEREFORE**, Plaintiff Dwayne Powell respectfully requests that the Court enter judgment in his favor and against Defendant DealMed Medical Supplies LLC and award him (i) reinstatement to his position with Defendant DealMed with an award of backpay and lost benefits; (ii) compensatory damages (both economic and non-economic) to be determined at trial, with interest; (iii) punitive damages; (iv) pre-judgment and post-judgment interest at the highest rates

allowed by law; (v) statutory attorneys' fees, costs and expenses with appropriate fee enhancement; and (vi) all other legally permissible relief that the Court deems appropriate and just.

### COUNT TWO

**(Violation of the LAD – Unlawful Discharge – "Perceived" Disability Discrimination)**

60. Plaintiff repeats and reincorporates each of the above allegations of the Complaint as though fully set forth herein.

61. "The LAD prohibits employers from discriminating against employees based upon actual disability or *perceived disability*." Dickson v. Community Bus Lines, Inc., 458 N.J. Super. 522, 531 n. 4 (App. Div. 2019) (emphasis added) (citing Rogers v. Campbell Foundry, Co., 185 N.J. Super. 109, 112-13 (App. Div. 1982)).

62. Defendant DealMed "perceived" Plaintiff to be disabled under the LAD and, in fact, Plaintiff's medial meniscus tear of his left knee, if genuine, would qualify Plaintiff for protections under the LAD.

63. Plaintiff's "perceived" "disability" or "handicap," and/or his "perceived" continued utility as an employee, was a motivating factor in Defendant DealMed's decision to terminate Plaintiff's employment.

64. Defendant DealMed's conduct against Plaintiff as described above otherwise violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -50.

65. As a result of Defendant DealMed's unlawful conduct, Plaintiff has endured significant damages including, but not limited to, physical and bodily injuries, severe emotional distress, humiliation, embarrassment, personal hardship, career and social disruption, psychological and emotional harm, economic losses, and other such damages.

**WHEREFORE**, Plaintiff Dwayne Powell respectfully requests that the Court enter judgment in his favor and against Defendant DealMed Medical Supplies LLC and award him (i) reinstatement to his position with Defendant DealMed with an award of backpay and lost benefits; (ii) compensatory damages (both economic and non-economic) to be determined at trial, with interest; (iii) punitive damages; (iv) pre-judgment and post-judgment interest at the highest rates allowed by law; (v) statutory attorneys' fees, costs and expenses with appropriate fee enhancement; and (vi) all other legally permissible relief that the Court deems appropriate and just.

## COUNT THREE

**(Violation of the LAD – Unlawful Discharge –
LAD Retaliation/Interference – Leave of Absence)**

66. Plaintiff repeats and reincorporates each of the above allegations of the Complaint as though fully set forth herein.

67. The LAD prohibits employers from interfering with, retaliating or taking reprisals against any employee because that employee has attempted to avail himself or herself of the rights protected by the LAD. See N.J.S.A. 10:5-12(d).

68. The LAD provides employees with the right to be free from disability discrimination and the right to avail oneself of a reasonable accommodation, such as a temporary and finite leave of absence.

69. Plaintiff attempted to avail himself of his right to take a temporary and finite leave of absence under the LAD after he became disabled or handicapped.

70. Alternatively, or in addition thereto, Defendant DealMed interfered with Plaintiff's right to seek or take a temporary and finite leave of absence under the LAD by refusing to acknowledge Plaintiff's obvious disability and/or engage in the requisite "interactive process."

71. As a result of Plaintiff's attempt to avail himself of such a reasonable accommodation, Defendant DealMed unlawfully retaliated against Plaintiff by terminating his employment.

72. Alternatively, or in addition thereto, Defendant DealMed's unlawful interference with Plaintiff's reasonable accommodation rights was the proximate or motivating cause of his unlawful termination.

73. As a result of Defendant DealMed's unlawful conduct, Plaintiff has endured significant damages including, but not limited to, physical and bodily injuries, severe emotional distress, humiliation, embarrassment, personal hardship, career and social disruption, psychological and emotional harm, economic losses, and other such damages.

**WHEREFORE**, Plaintiff Dwayne Powell respectfully requests that the Court enter judgment in his favor and against Defendant DealMed Medical Supplies LLC and award him (i) reinstatement to his position with Defendant DealMed with an award of backpay and lost benefits; (ii) compensatory damages (both economic and non-economic) to be determined at trial, with interest; (iii) punitive damages; (iv) pre-judgment and post-judgment interest at the highest rates allowed by law; (v) statutory attorneys' fees, costs and expenses with appropriate fee enhancement; and (vi) all other legally permissible relief that the Court deems appropriate and just.

## COUNT FOUR

**(Violation of the LAD – Unlawful Discharge – Failure to Reasonably Accommodate)**

74. Plaintiff repeats and reincorporates each of the above allegations of the Complaint as though fully set forth herein.

75. Under the LAD and its implementing administrative regulations, all employers shall consider the possibility of reasonable accommodation before firing a person with a disability.

76. Defendant DealMed failed to attempt to reasonably accommodate Plaintiff's "disability" prior to terminating his employment.

77. As a result of Defendant DealMed's unlawful conduct, Plaintiff has endured significant damages including, but not limited to, physical and bodily injuries, severe emotional distress, humiliation, embarrassment, personal hardship, career and social disruption, psychological and emotional harm, economic losses, and other such damages.

**WHEREFORE**, Plaintiff Dwayne Powell respectfully requests that the Court enter judgment in his favor and against Defendant DealMed Medical Supplies LLC and award him (i) reinstatement to his position with Defendant DealMed with an award of backpay and lost benefits; (ii) compensatory damages (both economic and non-economic) to be determined at trial, with interest; (iii) punitive damages; (iv) pre-judgment and post-judgment interest at the highest rates allowed by law; (v) statutory attorneys' fees, costs and expenses with appropriate fee enhancement; and (vi) all other legally permissible relief that the Court deems appropriate and just.

## COUNT FIVE

**(Violation of the LAD - Failure to Reasonably Accommodate)**

78. Plaintiff repeats and reincorporates each of the above allegations of the Complaint as though fully set forth herein.

79. Under the LAD, employers have a duty to engage in the "interactive process" so as to reasonably accommodate an employee with a "disability" or "handicap."

80. Defendant DealMed knew that Plaintiff was suffering from a temporary "disability" or "handicap" and refused to engage in the "interactive process" to provide him with a reasonable accommodation at the workplace.

81. Defendant DealMed's conduct violated the LAD.

82. As a result of Defendant DealMed's unlawful conduct, Plaintiff has endured significant damages including, but not limited to, physical and bodily injuries, severe emotional distress, humiliation, embarrassment, personal hardship, career and social disruption, psychological and emotional harm, economic losses, and other such damages.

**WHEREFORE**, Plaintiff Dwayne Powell respectfully requests that the Court enter judgment in his favor and against Defendant DealMed Medical Supplies LLC and award him (i) reinstatement to his position with Defendant DealMed with an award of backpay and lost benefits; (ii) compensatory damages (both economic and non-economic) to be determined at trial, with interest; (iii) punitive damages; (iv) pre-judgment and post-judgment interest at the highest rates allowed by law; (v) statutory attorneys' fees, costs and expenses with appropriate fee enhancement; and (vi) all other legally permissible relief that the Court deems appropriate and just.

## COUNT SIX

### (Lally Claim/Workers' Compensation Retaliation)

83. Plaintiff repeats and reincorporates each of the above allegations of the Complaint as though fully set forth herein.

84. New Jersey courts recognize "that a plaintiff has a common law right of action for wrongful discharge based upon an alleged retaliatory firing attributable to the filing of a workers' compensation claim." Lally Copygraphics, 85 N.J. 668, 670 (1981); see also N.J.S.A. 34:15-39.1

- 13 -

("It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer …").

85. Plaintiff made or attempted to make a claim for workers' compensation benefits against Defendant DealMed.

86. Plaintiff's employment from DealMed was thereafter unlawfully terminated in retaliation for making or attempting to make that workers' compensation claim.

87. As a result of Defendant DealMed's unlawful conduct, Plaintiff has endured significant damages including, but not limited to, physical and bodily injuries, severe emotional distress, humiliation, embarrassment, personal hardship, career and social disruption, psychological and emotional harm, economic losses, and other such damages.

**WHEREFORE**, Plaintiff Dwayne Powell respectfully requests that the Court enter judgment in his favor and against Defendant DealMed Medical Supplies LLC and award him (i) reinstatement to his position with Defendant DealMed with an award of backpay and lost benefits; (ii) compensatory damages (both economic and non-economic) to be determined at trial, with interest; (iii) punitive damages; (iv) pre-judgment and post-judgment interest at the highest rates allowed by law; (v) statutory attorneys' fees, costs and expenses with appropriate fee enhancement; and (vi) all other legally permissible relief that the Court deems appropriate and just.

### COUNT SEVEN

### (FMLA Interference)

88. Plaintiff repeats and reincorporates each of the above allegations of the Complaint as though fully set forth herein.

89. Plaintiff, an "eligible employee," was entitled to the benefit of the twelve (12) week job protection leave period provided by the FMLA.

90. Defendant DealMed denied that benefit, and therefore interfered with Plaintiff's rights, benefits and privileges guaranteed by the FMLA, by refusing or neglecting to inform Plaintiff he was eligible for FMLA leave under circumstances which gave rise to a duty that Defendant DealMed so advise Plaintiff of that eligibility.

91. As a proximate result of Defendant DealMed's interference with Plaintiff's FMLA rights, Plaintiff's employment was unlawfully terminated.

92. As a result of Defendant DealMed's unlawful conduct, Plaintiff has endured significant damages including, but not limited to, physical and bodily injuries, severe emotional distress, humiliation, embarrassment, personal hardship, career and social disruption, psychological and emotional harm, economic losses, and other such damages.

**WHEREFORE**, Plaintiff Dwayne Powell respectfully requests that the Court enter judgment in his favor and against Defendant DealMed Medical Supplies LLC and award him (i) reinstatement to his position with Defendant DealMed with an award of backpay and lost benefits; (ii) compensatory damages (both economic and non-economic) to be determined at trial, with interest; (iii) punitive damages; (iv) pre-judgment and post-judgment interest at the highest rates allowed by law; (v) statutory attorneys' fees, costs and expenses with appropriate fee enhancement; and (vi) all other legally permissible relief that the Court deems appropriate and just.

## COUNT EIGHT

### (Negligence)

93. Plaintiff repeats and reincorporates each of the above allegations of the Complaint as though fully set forth herein.

94. Defendant DealMed owed Plaintiff a duty to inform him that he was eligible for FMLA leave under the circumstances set forth above. See, e.g., In re Tp. of Parsippany-Troy Hills, supra, 419 N.J. Super. at 520 (citing 29 C.F.R. § 825.301(a)).

95. Defendant DealMed breached that duty when it refused or neglected to so inform Plaintiff of his eligibility for FMLA leave.

96. Defendant DealMed's breach of that duty proximately caused Plaintiff's employment termination.

97. As a result of Defendant DealMed's negligent conduct, Plaintiff has endured significant damages including, but not limited to, physical and bodily injuries, severe emotional distress, humiliation, embarrassment, personal hardship, career and social disruption, psychological and emotional harm, economic losses, and other such damages.

**WHEREFORE**, Plaintiff Dwayne Powell respectfully requests that the Court enter judgment in his favor and against Defendant DealMed Medical Supplies LLC and award him (i) reinstatement to his position with Defendant DealMed with an award of backpay and lost benefits; (ii) compensatory damages (both economic and non-economic) to be determined at trial, with interest; (iii) punitive damages; (iv) pre-judgment and post-judgment interest at the highest rates allowed by law; (v) statutory attorneys' fees, costs and expenses with appropriate fee enhancement; and (vi) all other legally permissible relief that the Court deems appropriate and just.

## DEMAND TO PRESERVE EVIDENCE

**DEMAND IS HEREBY MADE** that Defendant DealMed Medical Supplies LLC preserve all physical and electronic information pertaining or relating in any way to: (a) Plaintiff's employment; (b) the complete personnel files of all of Defendant's employees and former employees identified in this Complaint; (c) Plaintiff's claims under the New Jersey Law Against Discrimination and the Family Medical Leave Act of 1993; (d) any and all defenses thereto; and (e) pertaining or relating to any electronic data storage, digital images, computer images, cache memory, searchable data, emails, spreadsheets, employment files, memos, text messages and any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, Myspace, LinkedIn, etc.) and any other information and/or data and/or things and/or documents which may pertain to any claim or defense concerning this Complaint.

**Failure to do so may result in separate claims for spoliation of evidence and/or for appropriate adverse inferences**.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 4:35-1, Plaintiff hereby demands a trial by jury as to all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:5-1(c), Anthony S. Almeida, Esq. is hereby designated as trial counsel for Plaintiff.

- 17 -

**CERTIFICATION PURSUANT TO R. 4:5-1(b)(2)**

I hereby certify, pursuant to Rule 4:5-1, that the matter in controversy herein is not the subject of any other pending legal proceeding or arbitration nor is any other legal proceeding contemplated to the best of my information and belief. Further, the only other party I know of who *could* be joined in this lawsuit at this time is: **ADP TotalSource**.

**CERTIFICATION PURSUANT TO R. 4:5-1(b)(3)**

I hereby certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

                                                                     **s/** *Anthony S. Almeida*
ANTHONY S. ALMEIDA, ESQ.
N.J. Attorney Id. No. 024552005
**POULOS LOPICCOLO, PC**
1305 South Roller Road
Ocean, New Jersey 07712
Tel: (732) 757-0165
Fax: (732) 358-0180
Email: almeida@pllawfirm.com

*Attorneys for Plaintiff Dwayne Powell*

Date:   December 3, 2024
        Ocean, New Jersey